UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
R.E.G.C.,

                         Petitioner,

             - against -

MARKWAYNE MULLIN, *in his official capacity as Secretary, Department of Homeland Security*, *et al.*,

                    Respondents.
-------------------------------------------------------x

**<u>MEMORADUM & ORDER</u>**
26-CV-3865 (PKC)

PAMELA K. CHEN, United States District Judge:

This is yet another case challenging the recent and unprecedented expansion of civil immigration detention by Immigration and Customs Enforcement ("ICE"). The Court again rejects ICE's position that it may—indeed, *must*—detain noncitizens who have been living in this country without regard for whether that detention serves any legitimate purpose. Petitioner, R.E.G.C., is one of many people whose constitutional rights have been violated by this policy. His petition for writ of habeas corpus is granted, and Respondents are ordered to release him from custody immediately.

## BACKGROUND

Petitioner R.E.G.C. is a 30-year-old man from Venezuela. (Pet., Dkt. 1, ¶ 9.) He and his mother fled Venezuela due to political and economic instability and sought protection in the United States. (*Id.* ¶¶ 29–30.) On June 11, 2023, after waiting in Mexico for four months, they presented themselves at a port of entry to apply for asylum pursuant to an appointment Petitioner made on

the "CBP One"[1] smartphone application. (*Id.* ¶ 30; Resp., Dkt. 9, at 2.) The Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") initiating removal proceedings, and also granted him humanitarian parole under 8 U.S.C. § 1182(d)(5), allowing him to live and work in this country legally for approximately two years while his removal proceedings were pending. (Pet., Dkt. 1, ¶¶ 31, 38; Resp., Dkt. 9, at 2.)

Petitioner moved to New York City in June 2023, where he has lived since. (Pet., Dkt. 1, ¶ 26.) He lives with his partner, her children, and his mother, and he is "the primary provider for his family." (*Id.* ¶ 27.) His mother is disabled due to a spinal injury, and he supports her financially and with daily tasks. (*Id.*) On August 28, 2024, an immigration judge dismissed Petitioner's removal proceedings without prejudice. (*Id.* ¶ 38.)[2]

On April 17, 2026, Petitioner was pulled over for a traffic stop in Staten Island and subsequently arrested by ICE. (*Id.* ¶¶ 2, 32–35.) The same day, ICE issued him a new NTA re-initiating removal proceedings and categorizing him as "an alien present in the United States who has not been admitted or paroled." (*See* Pet. Ex. C, Dkt. 1-3, at 1.) Ten days later, on April 27, 2026, ICE issued a document titled "Additional Charges of Inadmissibility/Deportability," which stated that Petitioner was actually an "arriving alien," *not* an "alien present in the United States who ha[d] not been admitted or paroled." (*See* Pet. Ex. D, Dkt. 1-4, at 1.) As Petitioner points

---

[1] Petitioner explains that CBP One is "a smartphone application that permitted asylum seekers to preschedule a time to present themselves at a port of entry to request asylum." (Pet., Dkt. 1, ¶ 30 & n.2.)

[2] DHS and Petitioner had jointly moved to dismiss Petitioner's removal proceedings. (*See* Resp., Dkt. 9, at 2.) Petitioner believes the dismissal was based on his then-pending application and eligibility for Temporary Protected Status ("TPS") under DHS's 2023 TPS designation for Venezuela. (*See* Pet., Dkt. 1, ¶¶ 38, 45–50.) More details about Petitioner's TPS and the changing legal status of the Venezuela TPS designation are set forth in the Petition, (*see generally id.*), but the Court does not recount them in detail as they are not directly relevant to the Court's decision.

out, that classification—as an "arriving alien"—meant that under DHS's interpretations of its regulations, Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b) ("Section 1225(b)") and not eligible for any bond redetermination by an immigration judge. (*See* Pet., Dkt. 1, ¶ 40 (first citing 8 C.F.R. §§ 1001.1(q), 1003.19(h)(1); and then citing *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005)).)

The next day, April 28, 2026, the Second Circuit came out with its decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), in which it rejected ICE's position that Section 1225(b)(2)(A) applied to noncitizens like Petitioner who were already present in the United States and instead held that 8 U.S.C. § 1226(a) ("Section 1226(a)") applied. Then, on May 12, 2026, while Petitioner was still detained, ICE issued a Notice of Custody Determination form indicating that ICE was actually detaining Petitioner under Section 1226(a) and had made a determination under that statute to detain him pending his removal proceedings. (*See* Pet. Ex. E, Dkt. 1-5, at 1.)

Petitioner has now been detained by ICE for nearly three months. (*See* Pet., Dkt. 1, ¶¶ 1, 4.) On June 26, 2026, he filed the instant habeas petition through counsel. (*See generally id.*)[3] The same day, the Court entered an order directing Respondents to show cause, in writing, "why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released." (O.S.C., Dkt. 5, at 1.)[4] Respondents filed their response on July 6, 2026. (Resp., Dkt. 9.)[5]

---

[3] At the time he filed this action, Petitioner was detained at the Metropolitan Detention Center in Brooklyn, New York. (Pet., Dkt. 1, ¶¶ 4, 9; *see also* Pet. Ex. A, Dkt. 1-1.)

[4] The Court also granted Petitioner's request to proceed using his initials only. (*See* O.S.C., Dkt. 5, at 2.)

[5] The response was originally due July 1, 2026, (*see* O.S.C., Dkt. 5, at 1), but the Court granted Respondents' consented-to motion for an extension of time to file, (*see* 7/01/2026 Dkt. Order).

**DISCUSSION**

Respondents now contend that Petitioner is subject to mandatory detention under Section 1225(b)(2)(A). (Resp., Dkt. 9, at 3.) However, while they "respectfully disagree with" the Second Circuit's decision in *Barbosa da Cunha*, they acknowledge that the decision "controls and would lead this Court to grant the petition." (Resp., Dkt. 9, at 1, 3.)[6] The Court agrees that *Barbosa da Cunha* controls. Therefore, contrary to Respondents' position, Section 1225(b)(2)(A) does not apply to Petitioner. Rather, Petitioner's detention is governed by Section 1226(a). *See Barbosa da Cunha*, 175 F.4th at 73.

Detention under Section 1226(a) is discretionary; immigration authorities "may release" the noncitizen on bond. 8 U.S.C. § 1226(a)(2). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance.").

Here, Respondents effectively admit that they *did not exercise discretion* to detain Petitioner; rather, they detained him under the (incorrect) assertion that his detention was mandatory pursuant to Section 1225(b)(2)(A). (*See* Resp., Dkt. 9, at 1, 3.) "Such an assertion is precisely the *opposite* of an exercise of discretion." *Lopez Benitez*, 795 F. Supp. 3d at 495. Respondents detained Petitioner pursuant to the wrong statute, without any prior individualized custody determination, notice, or opportunity to be heard. Accordingly, for the reasons set forth

---

[6] Respondents preserve their arguments and reserve their right to appeal "in the event [*Barbosa da Cunha*] is vacated, stayed, or overruled." (Resp., Dkt. 9, at 1.)

in the Court's prior decisions, and countless other decisions across the country, Respondents' actions violated the Immigration and Nationality Act and Petitioner's procedural due process rights. *See, e.g., R.A.R.R. v. Almodovar*, 824 F. Supp. 3d 299, 305–07 (E.D.N.Y. 2026) (applying balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluding that the petitioner's detention violated his procedural due process rights where Respondents erroneously treated the petitioner as subject to mandatory detention under Section 1225(b)); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 504 (S.D.N.Y. 2025) (holding that the petitioner's detention "pursuant to the wrong statute violated due process"); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *2, *8–9 (S.D.N.Y. Dec. 23, 2025) ("Having determined that [Section 1225(b)(1)] is inapplicable to [an individual living in the United States for over two years], the Court concludes that [the petitioner's] detention pursuant to the wrong statute is unlawful."); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025) (concluding that "ICE's discretion-free detention of [the petitioner] abridged his rights under [Section] 1226 and violated due process," and collecting cases holding the same).[7]

The appropriate remedy for Petitioner's unlawful detention is release. *See Yao*, 813 F. Supp. 3d at 477 ("A bond hearing after the fact, by definition, would not and cannot cure [the]

---

[7] The Court is, again, "deeply troubled" by ICE's shifting bases for Petitioner's detention and post-hoc justifications for his unlawful arrest. *See S.G.V. v. Genalo*, No. 26-CV-2893 (PKC), 2026 WL 1492770, at *2 (E.D.N.Y. May 28, 2026) (explaining that "[a]s Respondents are no doubt aware, 'an executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards'" (quoting *Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJC), 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026))); *see also id.* (explaining that "to allow the contrary would permit Respondents to flout the demands of due process . . . , as well as erode the very principles of accountability and consistency integral to the administrative state" (collecting cases)). Thus, ICE's proffered Notice of Custody Determination pursuant to Section 1226(a), (Pet. Ex. E, Dkt. 1-5), which was issued nearly a month after Petitioner's arrest, (*see id.*), "cannot cure the violation of Petitioner's due process rights at the time of arrest," *S.G.V.*, 2026 WL 1492770, at *2.

constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering the same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violation suffered).[8]

## CONCLUSION

The petition for writ of habeas corpus, (Pet., Dkt. 1), is granted. Respondents are ordered to release Petitioner from custody **immediately** and no later than **24 hours from this Order**. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty. Respondents are directed to return to Petitioner any and all funds and property seized from Petitioner at the time of his arrest. Respondents are further directed to certify compliance with the Court's Order by filing a letter on the docket no later than **5:00 p.m. on July 9, 2026.**

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court. Respondents may not re-detain Petitioner without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under Section 1226.

---

[8] Because the Court orders Petitioner's release based on his statutory and constitutional claims, the Court does not reach Petitioner's Administrative Procedure Act ("APA") claim, which seeks the same relief. (*See* Pet., Dkt. 1, ¶¶ 157–60; *id.* at 47–48 (prayer for relief)); *see also M.K.*, 2025 WL 3720779, at *9 n.80 (declining to reach APA claim where the petitioner's "statutory challenge [had] merit and warrant[ed] the requested relief").

Petitioner's deadline to apply for fees under the Equal Access to Justice Act is thirty (30) days from a final judgment in this action.  *See* 28 U.S.C. § 2412(d)(1)(B).  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  July 7, 2026
          Brooklyn, New York